UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

JOSE J. GARCIA-GIRALDO,                    :
                                                    07 Civ. 9861 (JGK)
            Petitioner,                    :

        -v.-                               :

UNITED STATES OF AMERICA,                  :

            Respondent.                    :

-----------------------------------X

**GOVERNMENT'S BRIEF IN OPPOSITION
TO PETITIONER'S MOTION TO VACATE, SET ASIDE
OR CORRECT HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255**

MICHAEL J. GARCIA
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Kevin R. Puvalowski
    Assistant United States Attorney
    Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

JOSE J. GARCIA-GIRALDO,                    :
                                                07 Civ. 9861 (JGK)
              Petitioner,                  :

         -v.-                              :

UNITED STATES OF AMERICA,                  :

              Respondent.                  :

-----------------------------------X

         The Government respectfully submits this response in

opposition to the amended motion, pursuant to Title 28, United

States Code, Section 2255, of petitioner-defendant Jose Jairo

Garcia-Giraldo ("Garcia-Giraldo" or the "defendant") to vacate,

set aside, or correct his sentence.  Garcia-Giraldo's arguments

have either been waived or are squarely belied by the existing

record, and thus his motion should be denied without a hearing.

## STATEMENT OF FACTS

### A.   The Offense Conduct

         Garcia-Giraldo's conviction stemmed from his

participation in a large-scale international heroin organization

based in Pereira, Colombia.  (PSR ¶ 22).[1]  Garcia-Giraldo and

others directed the transport of heroin from Colombia to the

---

[1]      "PSR" refers to the Presentence Investigative Report
prepared by the United States Probation Office (the "Probation
Office") in connection with Garcia-Giraldo's sentencing.  Because
most of the other documents referenced herein were included in
the Appendix filed by Garcia-Giraldo's appellate counsel, the
Government has enclosed with the hard copy of this submission a
copy of that Appendix.  "A." refers to the corresponding page
number in that Appendix.

United States by use of couriers, among other methods.   (PSR
¶ 27).   The defendant was responsible for importing in excess of
30 kilograms of heroin into the United States.   (PSR ¶ 48).

        Garcia-Giraldo was arrested in Colombia on June 11,
2002, and extradited to the United States on June 24, 2003.   (PSR
¶ 36).

**B.    The Guilty Plea and Presentence Report**

        On February 21, 2006, Garcia-Giraldo pled guilty before
then-Chief Judge Michael B. Mukasey to Count One of the
Indictment, which charged him with conspiracy to import into the
United States one kilogram and more or heroin, in violation of 21
U.S.C. § 963.   (A. 19).   Prior to the plea, the Government had
offered Garcia-Giraldo a plea agreement,[2] but Garcia-Giraldo
himself, after consultations with counsel, elected not to enter
into the plea agreement and decided instead to plead without an
agreement.   Defense counsel confirmed this on the record at the
beginning of the plea proceeding, stating:

> After many consultations with my client,
> we've come here today to enter a plea of
> guilty.   There was a, recently, the
> possibility of pleading to a plea agreement,
> but at the 11th hour my client has elected
> not to plead guilty to a plea agreement and
> has chosen to plead guilty to the indictment,

---

[2]     The plea agreement offered by the Government contained a
stipulated Guidelines range of 135 to 168 months' imprisonment.
His eventual sentence of 144 months, therefore, would have been
squarely within the waiver of even that agreement.

and he will plead guilty this morning without
a plea agreement.

(A. 20).

Following Garcia-Giraldo's rejection of the offered
plea agreement, by letter dated January 27, 2007, the Government
set forth its position with respect to the application of the
United States Sentencing Guidelines ("U.S.S.G." or "the
Sentencing Guidelines") pursuant to the Court's suggestion in
United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991).
(A. 16). In that letter, the Government stated that, because the
amount of heroin involved in the conspiracy was more than 30
kilograms, the base offense level was 38, and that an addition of
4 levels was justified because the defendant was an organizer or
leader of a criminal activity that involved five or more
participants or was otherwise extensive. (A. 16-17). With a
reduction of 3 points for acceptance of responsibility, the total
offense level was calculated as a level 39. (A. 17). Because
the defendant had no criminal history points, that offense level
led to an applicable Sentencing Guideline range of 262-327
months. (Id.).

On February 21, 2006, Garcia-Giraldo appeared before
Judge Mukasey and entered a guilty plea to Count One of the
Indictment. (A. 19). Before accepting the defendant's guilty
plea, the District Court conducted a hearing that complied with
Rule 11 of the Federal Rules of Criminal Procedure. At the

-3-

outset of the proceeding, for example, the Court confirmed that
the defendant could understand the Spanish language interpreter
and put the defendant under oath.  (A. 21-22).  Judge Mukasey
then proceeded to inquire about the defendant's age, educational
background, health, and whether the defendant suffered from any
drug or alcohol impairments, (A. 22), and expressly found that
the defendant was competent to proceed with the plea, (A. 23).

        After confirming that Garcia-Giraldo had had a
sufficient opportunity to consult with his attorney, Judge
Mukasey asked Garcia-Giraldo if he was satisfied with his
counsel's representation, to which Garcia-Giraldo replied,
"[y]es, sir."  (A. 22-23).  Judge Mukasey informed the defendant
of all of the rights that the defendant possessed that would be
waived if the plea were accepted; Garcia-Giraldo confirmed at
each inquiry that he understood the rights he was waiving.  (A.
24-25).

        The Court then confirmed that Garcia-Giraldo had
received the Indictment and had discussed it with his counsel.
(A. 26).  Judge Mukasey explained the elements that the
Government would need to prove to sustain its burden of proof at
trial and the maximum penalties associated with the charge to
which the defendant was pleading guilty.  (A. 27).  Notably,
Judge Mukasey inquired specifically of Garcia-Giraldo's

-4-

understanding that the charge carried a ten-year mandatory minimum sentence:

>           THE COURT:  The mandatory minimum sentence
>           that is the least that could be sentenced to
>           for this crime is 10 years imprisonment, five
>           years of supervised release, and $100 special
>           assessment or special fine.  That's the
>           least.  Do you understand that?
>
>           THE DEFENDANT:  Yes, sir.

(A. 27-28).  The Court then ensured that the defendant was not threatened or forced to plead guilty or induced to plea by any promises.  (A. 30-31).

With respect to the factual basis for the plea, the District Court obtained a summary of the evidence from the Government and then asked the defendant to explain his conduct. (A. 31-32).  The defendant read a prepared statement wherein he admitted that he had engaged in telephone calls with others concerning a shipment of heroin that was brought into the United States, that the calls were intended to assist the process of bringing the heroin into the United States, that the quantity of heroin was in excess of one kilogram, and that he was pleading guilty because he was guilty.  (A. 32-33).  After defense counsel agreed that the allocution was sufficient, Judge Mukasey accepted the plea, finding it supported by the facts and voluntarily made. (A. 34).

Following Garcia-Giraldo's guilty plea, the United States Probation Office (the "Probation Office") prepared a

-5-

Presentence Investigation Report (the "Presentence Report").  The
Probation Office found the total offense level to be 39, as set
forth in the Government's <u>Pimentel</u> letter, the Criminal History
Category to be I, and a resulting Guidelines range of 262 to 327
months' imprisonment.  (PSR ¶¶ 48-57, 60, 80).

**C.    The Post-Plea Agreement**

The Government and the defendant entered into a post-
plea sentencing stipulation by letter dated August 28, 2006 (the
"Post-Plea Agreement").  (A. 37).  In the Post-Plea Agreement,
the parties stipulated that the applicable Sentencing Guidelines
offense level was 35 (a base offense level of 38, based on drug
weight, minus 3 points for acceptance), with a resulting
Sentencing Guidelines range of 168-210 months' imprisonment.  (A.
38).  Garcia-Giraldo expressly agreed that any sentence within
that range "would constitute a reasonable sentence in light of
all the factors set forth in Title 18, United States Code,
Section 3553(a)."  (A. 39).  The Post-Plea Agreement also
contained a provision whereby the defendant expressly waived his
right to appeal or litigate under Title 28, United States Code,
Sections 2255 or 2241, any sentence within or below this range.
(A. 40).

**D.    The Sentencing Proceeding**

The sentencing proceeding was held before Judge Mukasey
on August 29, 2006.  (A. 43).  Before proceeding to sentencing,

-6-

the Court first made inquiry of Garcia-Giraldo with respect to the Post-Plea Agreement.  (A. 44).  The Court explained that the defendant had a right to a hearing with respect to any contested sentencing issues and that the Government would have the burden at such a hearing to prove the enhancements that it sought.  (A. 45).  Among other things, Judge Mukasey specifically discussed that the defendant was agreeing that the quantity of heroin was 30 kilograms or more, that the resulting Guidelines range was 168 to 210 months, and that Garcia-Giraldo was agreeing to give up the "right to appeal or file any postconviction or habeas petition claiming your sentence should have been less."  (A. 46-47).  The defendant confirmed that he understood that.  (Id.).  The Court confirmed that Garcia-Giraldo had reviewed the Post-Plea Agreement with his lawyer, that it was translated, and that Garcia-Giraldo understood it before signing it.  (A. 49).  The Court also asked whether anyone had made any "promise or inducement" to enter into the Post-Plea Agreement and whether "anyone made a promise to you as to what the Court's sentence will be"; to both questions, Garcia-Giraldo responded, "[n]o, sir."  (A. 50).

Following the colloquy concerning the Post-Plea Agreement, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, the defense was given an opportunity to object to the Presentence Report, and then both defense counsel

-7-

and the defendant himself were provided an opportunity to speak on the defendant's behalf.  (A. 51-71).  Among other things, defense counsel argued that the defendant's health, age and pre-extradition confinement conditions all militated in favor of a sentence below the applicable Sentencing Guidelines range. (Id.).

The Court found, as stipulated by the parties, that the applicable Sentencing Guidelines offense level was 35, with a Criminal History Category of I and a resulting Sentencing Guidelines range of 168-210 months' imprisonment.  (A. 71). Judge Mukasey determined that a slight downward adjustment to this range was appropriate in light of the defendant's health and the circumstances of his confinement in Colombia, and sentenced the defendant to 144 months' imprisonment.  (A. 71).  The Court also imposed a five-year term of supervised release and a $100 special assessment.  (A. 72).

**E.    The Appellate Proceedings**

Garcia-Giraldo timely filed a notice of appeal and was appointed new counsel to represent him on that appeal.  Appellate counsel filed a submission, pursuant to Anders v. California, 386 U.S. 738 (1967), arguing that no non-frivolous issues on appeal existed.  The Government moved for dismissal of the appeal on the ground of the waiver of appeal, or, in the alternative, for

summary affirmance.  The Court of Appeals granted the motion for
summary affirmance by Order filed August 16, 2007.

Garcia-Giraldo is currently serving his sentence.

## ARGUMENT

## POINT I

## Garcia-Giraldo's Petition Should Be Rejected Pursuant To The Waiver He Knowingly And Voluntarily Executed

In the Post-Plea Agreement, Garcia-Giraldo stipulated
that the applicable Guidelines range was 168 to 210 months, (A.
38-39), and explicitly waived his right to appeal or challenge
pursuant to Sections 2255 or 2241 of Title 28 of the United
States Code, any sentence within or below that range.  (A. 40).
Indeed, at his sentencing proceeding, Garcia-Giraldo explicitly
confirmed that he understood that, under the Post-Plea Agreement,
he was waiving his right to challenge a sentence within or below
the stipulated Guidelines range.  (A. 47).  To the extent that
Garcia-Giraldo challenges his sentence, therefore, that challenge
has been waived and should be rejected.

The Court of Appeals has repeatedly held that such
waivers are typically valid and enforceable.  See United States
v. Haynes, 412 F.3d 37 (2d Cir. 2005); United States v. Morgan,
406 F.3d 135 (2d Cir. 2005); United States v. Fisher, 232 F.3d
301, 303 (2d Cir. 2000); United States v. Gomez-Perez, 215 F.3d
315, 318 (2d Cir. 2000); United States v. Difeaux, 163 F.3d 725,

728 (2d Cir. 1998); <u>United States</u> v. <u>Djelevic</u>, 161 F.3d 104, 106-07 (2d Cir. 1998) (<u>per</u> <u>curiam</u>); <u>United States</u> v. <u>Maher</u>, 108 F.3d 1513, 1531 (2d Cir. 1997); <u>United States</u> v. <u>Yemitan</u>, 70 F.3d 746, 747-48 (2d Cir. 1995) (dismissing appeal of a sentence within a stipulated Guidelines range where the appeal was foreclosed by defendant's plea agreement, because "[o]nly the dismissal of this appeal will afford the prosecution the benefit of its bargain"); <u>United States</u> v. <u>Salcido-Contreras</u>, 990 F.2d 51, 52 (2d Cir. 1993) (<u>per</u> <u>curiam</u>) (dismissing appeal of sentence within stipulated Guidelines range where appeal was foreclosed by defendant's plea agreement).

Although such waivers are not always enforceable, the circumstances under which a court will decline to enforce a waiver are very limited. <u>See</u> <u>United States</u> v. <u>Gomez-Perez</u>, 215 F.3d at 319 ("The[ ] exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence. Accordingly, we have upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement."). As the Court of Appeals noted in <u>Gomez-Perez</u>, the exceptions include situations:

> when the waiver was not made knowingly,
> voluntarily, and competently, when the
> sentence was imposed based on
> constitutionally impermissible factors, such

> as ethnic, racial or other prohibited biases,
> when the government breached the plea
> agreement, or when the sentencing court
> failed to enunciate any rationale for the
> defendant's sentence . . . .

21 F.3d at 319 (citations omitted); see also United States v.

Djelevic, 161 F.3d at 106-07 (waiver of appeal must be knowing

and voluntary); United States v. Jacobson, 15 F.3d 19, 22-23 (2d

Cir. 1994) ("Although an agreement not to appeal a sentence

within the agreed Guidelines range is enforceable, we see nothing

in such an agreement that waives the right to appeal from an

arguably unconstitutional use of naturalized status as the basis

for a sentence.") (citations omitted).  Here, there is nothing in

the record to suggest that the waiver was involuntary -- to the

contrary, the record shows that it was not -- and Garcia-Giraldo

does not claim that his sentence was based on constitutionally

impermissible factors or that the Government somehow breached the

Post-Plea Agreement.

     To entertain Garcia-Giraldo's sentencing challenge on

these facts -- where the stipulated range negotiated by counsel

was far below that found applicable by the Probation Office and

where the defendant was sentenced below even that stipulated

Sentencing Guidelines range -- would subvert the plea bargaining

process, the benefits of which have repeatedly been recognized by

the Court of Appeals:

> In no circumstance . . . may a defendant, who
> has secured the benefits of a plea agreement

-11-

and knowingly and voluntarily waived the
right to appeal a certain sentence, then
appeal the merits of a sentence conforming to
the agreement.  Such a remedy would render
the plea bargaining process and the resulting
agreement meaningless.

Salcido-Contreras, 990 F.2d at 53.  Accordingly, the Government

respectfully submits that the defendant's challenge to his

sentence should be rejected.

### POINT II

### Garcia-Giraldo's Claims Are Belied By The Record And Should Be Denied Without A Hearing

**A.    Applicable Law**

**1.    Section 2255 Claims Generally**

Relief under 28 U.S.C. § 2255 is available "only for a

constitutional error, a lack of jurisdiction in the sentencing

court, or an error of law or fact that constitutes a fundamental

defect which inherently results in [a] complete miscarriage of

justice."  Graziano v. United States, 83 F.3d 587, 590 (2d Cir.

1996) (per curiam) (internal quotations and citations omitted).

Where, as here, petitioner has pled guilty, the inquiry on

collateral review "is ordinarily confined to whether the

underlying plea was both counseled and voluntary."  See United

States v. Broce, 488 U.S. 563, 569 (1989); see also Bousley v.

United States, 523 U.S. 614, 621 (1998) (guilty plea may be

attacked on collateral review only in "strictly limited"

circumstances).  A Section 2255 motion may be appropriate where

-12-

petitioner alleges that his plea was not voluntary and intelligent, see Bousley, 523 U.S. at 618-619, or where petitioner claims that he received ineffective assistance of counsel in connection with the plea or plea agreement negotiations.  See Jones v. United States, 167 F.3d 1142, 1144-1145 (7th Cir. 1999); United States v. Cockerham, 237 F.3d 1179, 1191 (10th Cir. 2001).

### 2.    Ineffective Assistance of Counsel

Courts apply the framework established in Strickland v. Washington, 466 U.S. 668 (1984), to evaluate a section 2255 claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel.  See United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (citing Hill v. Lockhart, 474 U.S. 52, 57-58, (1985) (applying Strickland to the context of guilty pleas)).  The defendant bears the burden to: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," i.e., demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland v. Lockhart, 466 U.S. at 687-88, 693-94; accord Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001); Cullen v. United States, 194 F.3d 401, 403 (2d Cir. 1999).  Only if both of these elements are satisfied can the

-13-

petitioner demonstrate that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687.

In analyzing a claim that counsel's performance fell short of constitutional standards, a "court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 486 U.S. at 689). Thus, under Strickland,

> [an attorney's] strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Strickland, 466 U.S. at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' id. at 690, and may not use hindsight to second-guess her strategy choices." Mayo v. Henderson, 13 F.3d 528, 533; see also United States v. Jones, 918 F.2d 9, 11-12 (2d Cir. 1990); Strouse v. Leonardo, 928 F.2d 548, 553 (2d Cir. 1991). Thus, a defendant cannot prevail on a claim

-14-

of ineffective assistance merely because he believes that his
counsel's strategy was inadequate.  See United States v. Sanchez,
790 F.2d 245, 253 (2d Cir. 1986).

Even if an attorney's performance was objectively
unreasonable, the defendant must also prove prejudice.  The
defendant "must show that counsel's errors were so serious as to
deprive the defendant of a fair trial, a trial whose result is
reliable."  Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)
(quoting Strickland, 466 U.S. at 687).  The reviewing court must
assess "whether, absent counsel's deficient performance, there is
a reasonable probability that the outcome of the proceeding would
have been different."  Mayo, 13 F.3d at 534.  "'A reasonable
probability is a probability sufficient to undermine confidence
in the outcome.'"  Id. (quoting Strickland, 466 U.S. at 694).
Moreover, "an analysis focusing solely on mere outcome
determination, without attention to whether the result of the
proceeding was fundamentally unfair or unreliable, is defective."
Lockhart v. Fretwell, 506 U.S. at 369.  "[T]he prejudice
component of the Strickland test . . . focuses on the question
whether counsel's deficient performance renders the result of the
trial unreliable or the proceeding fundamentally unfair."  Id. at
372; see Bunkley v. Meachum, 68 F.3d 1518, 1522-23 (2d Cir.
1995).

### 3.  Need For A Hearing

When the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, no hearing is required." <u>Perez</u> v. <u>United States</u>, No. 07 Civ. 11179 (JGK), 2008 WL 2775856, at *5, (S.D.N.Y. July 1, 2008) (citing <u>Ochoa-Suarez v. United States</u>, Nos. 07 Civ. 9275, 03 Cr. 747, 2008 WL 2220637, at *4 (S.D.N.Y. May 27, 2008)); <u>see</u> 28 U.S.C. § 2255(b)); <u>see also</u> <u>Chang</u> v. <u>United States</u>, 250 F.3d 79, 86 (2d Cir. 2001) (a district court has discretion to rely on documentary evidence in deciding habeas petition, and need not conduct a "full-blown testimonial hearing" when in-court testimony "would not offer any reasonable chance of altering [the court's] view of the facts").

Section 2255 motions can be denied without a hearing, in particular, in cases where, as here, the claims contradict the prior sworn statements of the inmate. <u>See</u>, <u>e.g.</u>, <u>United States v. Hernandez</u>, 242 F.3d 110, 114 (2d Cir. 2001) (A "district court is entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney . . . and had been made no promises except those contained in the plea agreement"); <u>United States</u> v. <u>Soler</u>, 124 Fed. Appx. 62, 64, 2005 WL 545433, *2 (2d Cir. 2005) (summary order) (rejecting defendant's ineffective assistance claim that

he was unaware that his plea would subject him to a mandatory life sentence, where during plea colloquy defendant was informed of and stated that he understood this); see also Blackledge v. Allison, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

**B.  Discussion**

Garcia-Giraldo appears to move for relief on four[3] separate grounds:

- first, that defense counsel failed to disclose a plea offer that he would have taken, (Amended Petition at 5);

- second, that the guilty plea was obtained by fraud, deceit and ineffective assistance and was therefore unknowing and unintelligent, (Amended Petition at 6);

---

[3]    Garcia-Giraldo purports to assert a fifth ground for relief, that the "plea was unknowing and voluntary and therefore should be set aside," (Amended Petition at 9), but that claim appears to be part of his second ground, which asserts that the plea was obtained by fraud, deceit and ineffective assistance and therefore "is unknowing and unintelligent."  As discussed further below, whether this assertion is considered as one or two separate grounds, it should be rejected because it is plainly at odds with Garcia-Giraldo's sworn statements before Judge Mukasey.

- third, the Post-Plea Agreement was obtained by fraud and deceit, by coercion, and by ineffective assistance of counsel, (Amended Petition at 8); and

- fourth, that the sentence is unreasonable as a result of the disparity in the sentence received by Garcia-Giraldo and that of his co-defendants, (Amended Petition at 9).

Because each of these assertions are plainly contradicted by the record, including Garcia-Giraldo's sworn statements, they can and should be denied without a hearing.

The record plainly contradicts Garcia-Giraldo's first claim that his counsel failed to disclose the Government's plea offer to him.  Indeed, defense counsel referenced that offer at the plea proceeding and stated for the record that it was Garcia-Giraldo who had himself elected to reject that agreement:

> After many consultations with my client, we've come here today to enter a plea of guilty.  There was a, recently, the possibility of pleading to a plea agreement, but at the 11th hour my client has elected not to plead guilty to a plea agreement and has chosen to plead guilty to the indictment,

> and he will plead guilty this morning without
> a plea agreement.

(A. 20).[4]  In light of this explicit, contemporaneous reference,
made on the record and in Garcia-Giraldo's presence, Garcia-
Giraldo's claim on this issue is incredible on its face and
should be rejected.

Garcia-Giraldo's second and third claims -- that the
guilty plea and the Post-Plea Agreement were somehow obtained by
fraud, deceit, coercion and ineffective assistance and are
therefore not knowing and intelligent -- are also contradicted by
the record, specifically, his own statements.  At the plea
proceeding, for example, Judge Mukasey asked Garcia-Giraldo if he
was satisfied with his counsel's representation, to which Garcia-
Giraldo replied, "[y]es, sir."  (A. 22-23).  The Court also
specifically asked whether anyone had threatened Garcia-Giraldo
to plead guilty, to which Garcia-Giraldo responded, "[n]o, sir."
(A. 30).  The Court also asked if anyone had made promises or
inducements to Garcia-Giraldo or promised what his sentence would
be; Garcia-Giraldo again said no.  (A. 31).  With regard to the
Post-Plea Agreement, the Court similarly confirmed that Garcia-
Giraldo had reviewed the Post-Plea Agreement with his lawyer,
that it was translated, and that Garcia-Giraldo understood it

---

[4]    While, of course, the Government was not privy to Garcia-
Giraldo's discussions with his counsel, defense counsel's
statement on the record that it was Garcia-Giraldo himself who
decided to reject the plea offer is consistent with the
Government's recollection of events.

-19-

before signing it, (A. 49); and that no "promise or inducement" to enter into the Post-Plea Agreement or "promise to you as to what the Court's sentence will be" were made. (A. 50). On this record, Garcia-Giraldo's claims that he pled guilty and/or entered into the Post-Plea Agreement[5] due to supposed threats or promises by his counsel cannot stand.

In addition to Garcia-Giraldo's statements to Judge Mukasey that no promises were made to him, his assertions with respect to alleged promises by his counsel that he would receive a "time-served" sentence if he pled and/or entered into the Post-Plea Agreement are also belied by the fact that he was expressly informed -- at the plea proceeding and in the Agreement itself -- that he faced a mandatory ten-year sentence. (A. 27-28, 37). Given those express warnings, his self-serving statements that he only pled guilty and entered into the Post-Plea Agreement because of counsel's promise that he would receive a "time-served" sentence are simply not credible.

---

[5]    Garcia-Giraldo's related assertion that the Post Plea Agreement is invalid because there was no consideration for it is plainly incorrect. The Government had contended that Garcia-Giraldo should receive a four-level enhancement for aggravating role in the offense, as set forth in the Pimenetel letter. (A. 17). Garcia-Giraldo, meanwhile, asserted that he should receive "safety-valve" relief, as set forth in his counsel's sentencing submission. (Amended Petition, Exh. 3). As was made explicit at the sentencing proceeding, in entering into the Post-Plea Agreement, the Government "decided to bargain away its ability to seek an upward adjustment in terms of role in exchange for [counsel] giving up his rights to argue for safety valve relief." (A. 63). Both sides therefore gave up substantive arguments in entering into the agreement.

Garcia-Giraldo's fourth claim -- that his sentence was "unreasonable" -- also fails.  As an initial matter, as discussed above, Garcia-Giraldo agreed in the Post-Plea Agreement that any sentence within the stipulated range of 168 to 210 months' imprisonment would constitute a "reasonable" sentence under Section 3553(a) and that he waived his right to appeal or challenge any sentence at or below that range.  Even if the claim had not been waived, it would fail on the merits.  The record is clear that Judge Mukasey's sentence was both procedurally and substantively reasonable.  Procedurally, Judge Mukasey appropriately calculated the applicable Guidelines range, expressly considered the relevant factors under 18 U.S.C. § 3553(a), and then demonstrated his understanding that the Guidelines were non-binding by sentencing Garcia-Giraldo below the applicable Guidelines range.  Substantively, the record is clear that Garcia-Giraldo was convicted of a serious narcotics offense that involved a large quantity of heroin.  Indeed, the proffer notes that Garcia-Giraldo attaches to his petition demonstrate that he played a significant role[6] in the heroin

---

[6]     The only specific basis for this "unreasonableness" claim is that there was an alleged unwarranted disparity between Garcia-Giraldo's sentence and the sentences of his co-conspirators, in particular his brother.  This issue was addressed at length in defense counsel's sentencing submission (attached as an exhibit to the petition) and at the sentencing proceeding.  The Government argued that, based on the proof it had, Garcia-Giraldo was far more culpable than his brother.  (A. 62-63).  Moreover, this view is supported by the proffer notes submitted by Garcia-Giraldo, which confirm unequivocally that his brother got

trade over a long period of time.  Based on this record, Judge
Mukasey's below-Guidelines sentence cannot be deemed
"unreasonable."  See United States v. Fernandez, 443 F.3d 19, 26
(2d Cir.), cert. denied, 127 S. Ct. 192 (2006) ("[I]n the
overwhelming majority of cases, a Guidelines sentence will fall
comfortably within the broad range of sentences that would be
reasonable in the particular circumstances.").

Thus, each of Garcia-Giraldo's specific claims are
contradicted by the clear record and can be rejected.  His more
general suggestions of ineffective assistance of counsel are also
wholly unsupported by the record.  The record shows that counsel:
(a) explored, at his client's behest, the possibility of
cooperation,[7] (Amended Petition, Exh. 2); (b) met with his client
on numerous occasions to discuss a plea, (A. 20); (c) prepared a
very extensive 23-page submission to the Court in advance of
sentence, (Amended Petition, Exh. 3); (d) negotiated an agreement
with the Government that resulted in a Guidelines range that was
very substantially lower than the range set forth in the Pre-

_____

involved in the drug business only long after Garcia-Giraldo and
that the brother served as an intermediary between Garcia-Giraldo
and the couriers who transported Garcia-Giraldo's heroin.
(Amended Petition, Exh. 2, at 5).

[7]    Notwithstanding Garcia-Giraldo's repeated suggestion that he
could have obtained a cooperation agreement but for his counsel's
conduct, the Government elected not to pursue a cooperation
relationship with Garcia-Giraldo -- obviously, a decision within
the Government's discretion -- and no cooperation agreement was
ever offered.

Sentence Report; and (e) argued various Section 3553(a) factors at sentencing, successfully convincing Judge Mukasey to sentence below the stipulated Guidelines range.  These efforts show competent, diligent, representation, notwithstanding the contrary-to-the-plain-record claims of Garcia-Giraldo.

Giraldo's suggestion that his appellate counsel was ineffective because she submitted an <u>Anders</u> brief instead of challenging the "reasonableness" of the sentence, (Amended Petition at 18), can also be rejected.  As noted above, Garcia-Giraldo waived his right to appeal any sentence below 210 months. Based on that waiver, and based upon a review of the record, appellate counsel concluded that there were no non-frivolous issues for appeal, a conclusion that the Court of Appeals agreed with in summarily affirming.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Garcia-Giraldo's Section 2255 motion should be denied without a hearing.

Dated:  New York, New York
        July 25, 2008

_____/s/_____
KEVIN R. PUVALOWSKI
Assistant United States Attorney
Telephone:  (212) 637-2311

-23-

CERTIFICATION OF SERVICE

Kevin R. Puvalowski, deposes and says that:

1.    I am employed in the Office of the United States Attorney for the Southern District of New York.

2.    On July 25, 2008, I caused to be served a copy of the foregoing GOVERNMENT'S BRIEF IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT HIS SENTENCE PURSUANT TO 28 U.S.C. § 2255 by First Class Mail on:

                Jose Jairo Garcia Giraldo
                Reg. No. 55244-054
                CI McRae
                P.O. Drawer 30
                McRae, Georgia 3105

3.    I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated:  New York, New York
        July 25, 2008


                _____/s/_____
                KEVIN R. PUVALOWSKI