UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────
JOSE JAIRO GARCIA-GIRALDO,

                    Petitioner,              07 Civ. 9861 (JGK)

          - against -                        OPINION AND ORDER

UNITED STATES,

                    Respondent.
────────────────────────────────────

JOHN G. KOELTL, District Judge:

     The petitioner, Jose Jairo Garcia-Giraldo, challenges his
conviction and sentence pursuant to 28 U.S.C. § 2255.  He
pleaded guilty before then Chief Judge Mukasey to one count of
conspiracy to import heroin into the United States in violation
of 21 U.S.C. § 963.  The petitioner pleaded guilty without a
plea agreement.  The petitioner thereafter entered into a
sentencing agreement in which he stipulated to a Sentencing
Guideline Range of 168-210 months' imprisonment.  The sentencing
agreement contained a provision waiving the right to appeal or
litigate under 28 U.S.C. § 2255 or 2241.  On August 29, 2006,
the petitioner was sentenced before Chief Judge Mukasey
primarily to 144 months' imprisonment.  Thereafter, the Court of
Appeals for the Second Circuit summarily affirmed the
petitioner's conviction.

     The petitioner raises several claims.  He argues that his
trial counsel provided ineffective assistance of counsel by

failing to advise him about a Government plea offer.  He also claims that his plea was involuntary and that his subsequent agreement to the sentencing agreement was also involuntary.  In addition, he claims that his sentence is unreasonable.  This Court appointed counsel for the petitioner and held an evidentiary hearing on January 25, 2010, at which both the petitioner and his trial counsel testified.  At the hearing, the petitioner's new counsel raised the additional argument that the petitioner's trial counsel was under a conflict of interest at the time he represented the petitioner because the petitioner's trial counsel sought the petitioner's assistance in obtaining other clients from Colombia.

Having considered the parties' submissions and having assessed the credibility of the witnesses, the Court makes the following findings of fact and reaches the following conclusions of law.

**I.**

In June 2002, a superseding indictment was filed charging the petitioner with conspiring, in violation of 21 U.S.C. § 963, to import one kilogram and more of heroin into the United States in violation of 21 U.S.C. §§ 812, 952, 960(a)(1), and 960(b)(1)(A).  The petitioner was arrested in Colombia on June

11, 2002, and extradited to the United States on June 24, 2003. (Pre-Sentence Report ("PSR") 1.)  Trial counsel testified at the evidentiary hearing that he was appointed by Chief Judge Mukasey in 2003 to represent the petitioner.  He represented the petitioner from the arraignment through the petitioner's sentencing before Chief Judge Mukasey.

Trial counsel testified credibly that he saw the petitioner on numerous occasions at the Metropolitan Detention Center ("MDC") and spent over a hundred hours visiting with the petitioner.  Trial counsel had plea discussions with Assistant United States Attorney Marc Racanelli and then with his successor, Kevin Puvalowki.  In March 2004, the Government provided a letter, pursuant to United States v. Pimentel, 932 F.2d 1029 (2d Cir. 1991), that calculated the Government's view of the petitioner's United States Sentencing Guideline ("U.S.S.G.") Range as 262-327 months.  (Def. Ex. A.)  The Government provided a second Pimentel letter dated January 10, 2006.  (Def. Ex. B.)  The Government's position with respect to the petitioner's Guideline Sentencing Range was the same in both letters.  These calculations were based on the Government's contention that the conspiracy involved at least 30 kilograms of heroin and that the base offense level was therefore 38 under U.S.S.G. § 2D1.1(c), that the petitioner should receive a 4 level upward adjustment under U.S.S.G § 3B1.1(a) because he was

3

an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, and that he should be afforded a 3 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).  With offense level 39 and a criminal history category of I, the resulting Guideline Sentencing Range was 262 to 327 months.  These Pimentel letters were in error by including Count Two of the indictment because the petitioner was not charged in that count, but that error did not change the Sentencing Guideline calculations.  The Government provided a third Pimentel letter dated January 27, 2006 that correctly indicated that the petitioner was charged only in Count One of the indictment with conspiracy to import more than one kilogram of heroin in violation of 21 U.S.C. § 963.  (Government ("Gov.") Ex. 1.)  The Pimentel letter contained the same Guideline Sentence calculations and concluded that the petitioner's Guideline Sentence Range was 262 to 327 months' imprisonment.

While the petitioner denies that his trial counsel discussed a plea offer with him, the overwhelming credible evidence is to the contrary.  Trial counsel testified that he first discussed a possible plea agreement with the petitioner during a visit to the MDC on December 26, 2005, and his notes support that testimony.  (Gov. Ex. 8.)  Trial counsel testified credibly, supported by notes of numerous meetings with the

petitioner, that trial counsel discussed the possible plea agreement with the petitioner, the advantages and disadvantages of the plea agreement, and the evidence against the petitioner. The first plea agreement that has been located is a February 15, 2006 letter from the Government. (Gov. Ex. 2.)  However, the terms of that potential agreement were plainly discussed by trial counsel with the petitioner prior to that date, as trial counsel's notes reflect.  The plea agreement provided for a Stipulated Guideline Range of 135 to 168 months.  The Guideline Sentence Range was based on a quantity of heroin of more than 10 and less than 30 kilograms and contained no enhancement for a managerial role in the offense.  The proposed plea agreement also provided that the parties agreed that the petitioner would not seek to qualify for safety valve relief from the mandatory sentencing provisions of Title 21, which would have required a sentence of no less than 120 months.  See 21 U.S.C. §§ 960(b)(1)(A) & 963.  The proposed agreement would have allowed the petitioner to argue that the Guideline Sentence should be reduced in light of all the factors in 18 U.S.C. § 3553(a). However, under the agreement, the petitioner's sentence could not be less than the mandatory minimum sentence.

Trial counsel discussed with the petitioner the advantages and disadvantages of entering into the plea agreement.  Trial counsel told the petitioner that he should consider himself

lucky if his sentence were only 120 months.  Trial counsel's
notes reflect that he discussed the evidence with the
petitioner.  The petitioner was not satisfied with the proposed
plea agreement because he pointed to the fact that his brother
had received a sentence of only 43 months.  (Gov. Ex. 7.)  Trial
counsel explained that the only way the petitioner could receive
a sentence lower than the statutory mandatory minimum would be
to qualify for the statutory safety valve under 18 U.S.C. §
3553(f) which required the petitioner to establish, among other
things, that, despite the Government's view, he was not an
organizer, manager, or supervisor of others in the offense.  See
18 U.S.C. § 3553(f)(4).  This was contrary to the Government's
view of the petitioner's role in the offense, and the only way
for the petitioner to plead guilty and qualify for the safety
valve was to reject the plea agreement, plead guilty to the
indictment, and proceed to a Fatico hearing at which the
petitioner could attempt to prove that he qualified for safety
valve treatment.  See United States v. Fatico, 603 F.2d 1053 (2d
Cir. 1979).  Trial counsel warned that there were a lot of drugs
involved in the offense, and that he had no control over the
witnesses at a hearing.

        In view of the petitioner's desire to attempt to obtain a
sentence less than the mandatory minimum, trial counsel
recommended that the petitioner proceed to plead guilty without

a plea agreement and attempt to obtain the advantage of the safety valve at a <u>Fatico</u> hearing.  Trial counsel testified that it was the petitioner's decision to reject the plea agreement. Trial counsel's testimony was credible and was supported by his contemporaneous notes.  (Gov. Ex. 8.)

It is plain that trial counsel discussed the relative merits of the plea agreement with the petitioner and that it was the petitioner's knowing and voluntary decision to proceed to plead guilty without a plea agreement.  The petitioner's statements that his trial counsel did not disclose the plea agreement to him are not credible.  (Tr. 65, 70.)

The petitioner's claims that his trial counsel somehow forced him to plead guilty are also not credible.  Trial counsel met extensively with the petitioner in preparation for the petitioner's guilty plea.  The contemporaneous notes reflect an extensive and conscientious discussion of the merits of entering into the plea agreement or pleading guilty without the plea agreement.  (Gov. Ex. 8.)  Contrary to the petitioner's allegation, trial counsel did not promise the petitioner that if he pleaded guilty, the Court would sentence the petitioner to any specific sentence.  These conclusions are also supported by the actual transcript of the guilty plea.

On Feberuary 21, 2006, the petitioner pleaded guilty before Chief Judge Mukasey to Count One of the Indictment, which

charged him with conspiracy to import into the United States one kilogram and more of heroin, in violation of 21 U.S.C. § 963. Defense counsel confirmed on the record that the petitioner had decided to plead guilty without entering into the plea agreement with the Government.  At the beginning of the plea the petitioner's trial counsel stated:

> After many consultations with my client, we've come here today to enter a plea of guilty.  There was a, recently, the possibility of pleading to a plea agreement, but at the 11th hour my client has elected not to plead guilty to a plea agreement and has chosen to plead guilty to the indictment, . . . and he will plead guilty this morning without a plea agreement . . . . .

(App. 20.)  The petitioner's counsel also confirmed that he had received the January 27, 2006 <u>Pimental</u> letter and that he had reviewed it with the petitioner.  (App. 20.)

Before accepting the petitioner's guilty plea, Chief Judge Mukasey conducted a thorough hearing that complied with Rule 11 of the Federal Rules of Criminal Procedure.  The Court placed the petitioner under oath and confirmed that the petitioner could understand the Spanish language interpreter.  (App. 21-22.)  Chief Judge Mukasey then proceeded to inquire about the petitioner's age, educational background, health, and whether the petitioner suffered from any drug or alcohol impairments, (App. 22.), and expressly found that the petitioner was competent to proceed with the plea, (App. 23.).

After confirming that the petitioner had had a sufficient
opportunity to consult with his attorney, Chief Judge Mukasey
asked the petitioner if he was satisfied with his counsel's
representation, to which the petitioner replied, "[y]es, sir."
(App. 22-23.)  Chief Judge Mukasey informed the petitioner of
all of the rights that the petitioner possessed that would be
waived if the plea were accepted; the petitioner confirmed at
each inquiry that he understood the rights he was waiving.
(App. 24-26).

The Court then confirmed that the petitioner had received
the Indictment and had discussed it with his counsel.  (App.
26.)  The Court explained the elements that the Government would
need to prove to sustain its burden of proof at trial and the
maximum penalties associated with the charge to which the
petitioner was pleading guilty.  (App. 27.)  Chief Judge Mukasey
inquired specifically whether the petitioner understood that the
charge carried a ten-year mandatory minimum sentence:

> THE COURT:  The mandatory minimum sentence that is the
> least that you could be sentenced to for this crime is
> 10 years imprisonment, five years of supervised
> release, and $100 special assessment or special fine.
> That's the least.  Do you understand that?
>
> THE [PETITIONER]"  Yes, sir.

(App. 27-28.)  The Court confirmed that the petitioner
understood the Sentencing Guideline.  (App. 29-30.)  The Court
then ensured that the petitioner was not threatened or forced to

9

plead guilty or induced to plead guilty by any promises.  (App. 30-31.)  The Court also ensured that the petitioner was aware of the Pimentel letter and that it was not binding on the Court or anyone else.  (App. 30-31.)

With respect to the factual basis for the plea, the Court obtained a summary of the evidence from the Government and then asked the petitioner to explain his conduct.  (App. 31-32.)  The petitioner read a prepared statement in which he admitted that he had engaged in telephone calls with others concerning a shipment of heroin that was brought into the United States, that the calls were intended to assist the process of bringing the heroin into the United States, that the quantity of heroin was in excess of one kilogram, and that he was pleading guilty because he was guilty.  (App. 32-33.)  After defense counsel agreed that the allocution was sufficient, Chief Judge Mukasey accepted the plea, finding it supported by the facts and voluntarily made.  (App. 34.)

Following the petitioner's guilty plea, the United States Probation Office (the "Probation Office") prepared a PSR.  The Probation Office found the total offense level to be 39, as set forth in the Government's Pimentel letter, the Criminal History Category to be I, and a resulting Guideline Range of 262 to 327 months' imprisonment.  (PSR ¶¶ 48-57, 60, 80.)

Following the petitioner's guilty plea, trial counsel
continued to attempt to persuade the Government that the
petitioner should receive safety valve treatment.  At one point,
the Government was prepared to enter into the original proposed
plea agreement with a Stipulated Guideline Range of 135 to 168
months.  (Tr. 27.)  The plea agreement would still have
prevented the petitioner from obtaining the safety valve.  (Gov.
Ex. 10.)  Trial counsel testified credibly that the petitioner
rejected that proposed plea agreement, because the petitioner
wanted the opportunity to qualify for the safety valve and
obtain a sentence below the mandatory minimum sentence, despite
trial counsel's advice to take that plea offer.  (Tr. 27-29, 57-
59.)  However, as trial counsel continued to prepare for the
Fatico hearing, and discussed the evidence with the petitioner,
the petitioner indicated that he was prepared to accept that
plea agreement.  (Tr. 28.)  When trial counsel discussed that
proposal with the Government, the prosecutor said that he could
no longer agree to the previously offered plea agreement because
the evidence developed in connection with the proposed hearing
indicated that the amount of heroin involved in the conspiracy
was in excess of thirty kilograms.  (Tr. 28, 57-59.)  Trial
counsel told the petitioner that it was the petitioner's fault
for not having agreed to the prior plea agreement when it was

11

still available, an accusation that trial counsel repeated after
the petitioner was sentenced.  (Tr. 29.)

Trial counsel prepared a thorough sentencing submission for
the petitioner, dated August 13, 2006, in which trial counsel
argued that the amount of heroin that the petitioner should be
responsible for was less than 30 kilograms, that the petitioner
should be entitled to safety valve treatment, and that personal
circumstances including harsh conditions of confinement and
health issues supported a sentence of only 50 months'
imprisonment.  (Gov. Ex. 7.)  There is no dispute that the
letter was a thorough submission on the petitioner's behalf.

The Government's final plea offer shortly before
sentencing, as reflected in the August 28, 2006 Sentencing
Agreement ultimately signed by the petitioner, was that the
petitioner agree that the conspiracy involved at least 30
kilograms of heroin, but without any sentencing enhancement for
the petitioner's role in the offense, resulting in an offense
level of 35 (38 for the quantity of drugs, less 3 levels for
acceptance of responsibility) and a Stipulated Guideline
Sentencing Range of 168 to 210 months.  (Gov. Ex. 3.)  The
Sentencing Agreement specifically provided that the petitioner
would not seek to qualify for the safety valve and thus the
petitioner faced a mandatory minimum sentence of 120 months.
(Gov. Ex. 3.)  The agreement also provided that the petitioner

12

agreed that any sentence within the Stipulated Guideline Range
was a reasonable sentence, although the petitioner could argue
for a sentence outside the Stipulated Guideline Range based upon
the factors in 18 U.S.C. § 3553(a).  The agreement also
contained a provision whereby the petitioner expressly waived
his right to appeal or litigate under 28 U.S.C. §§ 2255 or 2241,
any sentence within or below the Stipulated Guideline Range.

It is plain that trial counsel thoroughly discussed the
merits of this agreement with the petitioner and the merits and
risks of proceeding with a Fatico hearing at which the
Government could have attempted to increase the potential
Guideline Range by, for example, substantiating that the
petitioner's Guideline Range should be enhanced by a role
adjustment.  (Gov. Ex. 11.)  The petitioner finally signed the
Sentencing Agreement on August 29, 2006, the date of his
sentencing.  (Gov. Ex. 3.)  The petitioner's assertion that his
trial counsel promised him "time served" is not credible.  (Tr.
76.)  Trial counsel's testimony that he never promised the
defendant a specific sentence is wholly credible, is supported
by the contemporaneous documents and by the petitioner's own
contemporaneous statements that no promises had been made to
him.  (Tr. 32.)

At the August 29 hearing, Chief Judge Mukasey first asked
the petitioner about the Sentencing Agreement (App. 44.)  Chief

Judge Mukasey noted that he was initially told that there was to be a hearing with respect to the petitioner's role in the offense and the amount of drugs involved, but he was advised that the parties had now reached an agreement.  The petitioner agreed.  The Court explained that the petitioner had a right to a hearing with respect to any contested sentencing issues and that the Government would have the burden at such a hearing to prove the enhancements that it sought.  (App. 45.)  Among other things, Chief Judge Mukasey specifically discussed that the petitioner was agreeing that the quantity of heroin was 30 kilograms or more, that the resulting Guideline Range was 168 to 210 months, that there would be no role enhancement, and that the petitioner was agreeing to give up the "right to appeal or file any postconviction or habeas petition claiming your sentence should have been less."  (App. 46-47.)  The petitioner confirmed that he understood that.  (App. 46-47.)  The Court confirmed that the petitioner had reviewed the Sentencing Agreement with his lawyer, that it was translated, and that the petitioner understood it before signing it.  (App. 49.)  Contrary to his current assertions, the petitioner told Chief Judge Mukasey that there had been a prior agreement, but he acknowledged that the Sentencing Agreement superseded the prior agreement.  (App. 50.)  The Court also asked whether anyone had made any "promise or inducement" to enter into the Sentencing

Agreement and whether "anyone made a promise to you as to what the Court's sentence will be"; to both questions, the petitioner responded, "[n]o, sir."  (App. 50.)

Following the colloquy concerning the Sentencing Agreement, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, the defense was given an opportunity to object to the PSR, and then both defense counsel and the petitioner himself were provided an opportunity to speak on the petitioner's behalf.  (App. 51-71.)  Defense counsel pointed out that he had submitted the August 13, 2006 Sentencing letter to the Court. (App. 52.)  Defense counsel argued that the petitioner's health, age, and pre-extradition confinement conditions all militated in favor of a sentence below the applicable Sentencing Guideline Range.  (App. 51-71.)

The Court then found, as stipulated by the parties, that the applicable Sentencing Guideline offense level was 35, with a Criminal History Category of I and a resulting Sentencing Guideline Range of 168-210 months' imprisonment.  (App. 71.) Chief Judge Mukasey determined that a slight downward adjustment to this range was appropriate in light of the petitioner's health and the circumstances of his confinement in Colombia, and sentenced the petitioner to 144 months' imprisonment.  (App. 71.)  The Court also imposed a five-year term of supervised release and a $100 special assessment.  (App. 71-72.)

Prior to sentencing, the petitioner raised with his trial counsel the fact that doing a good job for the petitioner would be excellent publicity for trial counsel in Colombia, but trial counsel never actually obtained any business from his representation of the petitioner.  (Tr. 31, 46-47.)

The petitioner timely filed a notice of appeal and was appointed new counsel to represent him on that appeal. Appellate counsel filed a submission, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), arguing that no non-frivolous issues on appeal existed.  The Government moved for dismissal of the appeal on the ground of the waiver of appeal, or, in the alternative, for summary affirmance.  The Court of Appeals for the Second Circuit granted the motion for summary affirmance by Order filed August 16, 2007.

The petitioner is currently serving his sentence.

**II.**

Relief under 28 U.S.C. § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice."  <u>Graziano v. United States</u>, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (internal quotation marks and citations

omitted.)  Where, as here, the petitioner has pleaded guilty,
the inquiry on collateral review "is ordinarily confined to
whether the underlying plea was both counseled and voluntary."
United States v. Broce, 488 U.S. 563, 569 (1989); see also
Bousley v. United States, 523 U.S. 614, 621 (1998) (guilty plea
may be attacked on collateral review only in "strictly limited"
circumstances).  The Court of Appeals for the Second Circuit has
explained that

> In no circumstance . . . may a defendant, who has
> secured the benefits of a plea agreement and knowingly
> and voluntarily waived the right to appeal a certain
> sentence, then appeal the merits of a sentence
> conforming to the agreement.  Such a remedy would
> render the plea bargaining process and the resulting
> agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.
1993) (per curiam); see also United States v. Djelevic, 161 F.3d
104, 106-07 (2d Cir. 1998) (per curiam); Herrera-Gomez v. United
States, No. 08 Civ. 7299, 2009 WL 4279439, at *4 (S.D.N.Y. Dec.
1, 2009); Czernicki v. United States, 270 F. Supp. 2d 391, 393
(S.D.N.Y. 2003); Henriquez v. United States, No. 03 Civ. 478,
2003 WL 21242722, at *1 (S.D.N.Y. May 29, 2003).

However, a § 2255 motion may be appropriate where the
petitioner alleges that the petitioner's plea was not voluntary
and intelligent, see Bousley, 523 U.S. at 618-19, or where the
petitioner claims ineffective assistance of counsel in
connection with the plea or plea agreement negotiations.  See

17

United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005) (per
curiam); United States v. Cockerham, 237 F.3d 1179, 1191 (10th
Cir. 2001); Jones v. United States, 167 F.3d 1142, 1144-45 (7th
Cir. 1999); United States v. Owolabi, No. 07 Civ. 9487, 2008 WL
1809180, at *2 (S.D.N.Y. Apr. 18, 2008) (citing United States v.
Hernandez, 242 F.3d 110, 114 (2d Cir. 2001)); see also Herrera-
Gomez, 2009 WL 4279439, at *4.  A petitioner could also assert a
valid claim under § 2255 if he could establish that the
petitioner's counsel failed to convey a Government plea offer
that the petitioner would have accepted, or that the
petitioner's counsel failed to advise him of the merits of
accepting a plea offer when it was unreasonable not to accept
it.  See Pham v. United States, 317 F.3d 178, 183 (2d Cir. 2003)
(unreasonable for defense counsel to fail to convey plea offer
to defendant); Cullen v. United States, 194 F.3d 401, 404 (2d
Cir. 1999) (unreasonable for defense counsel to fail to advise
defendant regarding acceptance of plea offer).[1]

Courts apply the framework established in Strickland v.
Washington, 466 U.S. 668 (1984), to evaluate a § 2255 claim that
a guilty plea was involuntary or unknowing due to ineffective

---

[1] It is unnecessary to determine whether the petitioner's waiver contained in
the Sentencing Agreement should bar his petition.  There are exceptions to
such a waiver, including where the agreement was itself coerced.  See, e.g.,
Baeza-Contreras v. United States, No. 08 Civ. 5881, 2010 WL 54758, at *5
(S.D.N.Y. Jan. 2, 2010) (waiver of appeal may be challenged when "waiver was
not knowing and voluntary" or in case of ineffective assistance of counsel).
In this case, the petitioner makes various claims of coercion and fraud that
are wholly without merit.  It is therefore appropriate to resolve this
petition on the merits rather than parsing the waiver provision.

assistance of counsel.  See Hernandez, 242 F.3d at 112 (citing
Hill v. Lockhart, 474 U.S. 52, 57-58 (1985)) (applying
Strickland to guilty pleas).  To establish a claim of
ineffective assistance of counsel, the petitioner must show both
that (1) his counsel's performance was deficient in that it was
objectively unreasonable under professional standards prevailing
at the time, and (2) his counsel's deficient performance was
prejudicial to his case.  See Strickland, 466 U.S. at 687;
Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995); see also
Herrera-Gomez, 2009 WL 4279439, at *5.

     The petitioner cannot meet the first prong of this test
merely by showing that his counsel employed a poor strategy or
made a wrong decision.  Instead, the petitioner must establish
that his counsel "made errors so serious that counsel was not
functional as the 'counsel' guaranteed . . . by the Sixth
Amendment."  Strickland, 466 U.S. at 687.  In fact, there is a
"strong presumption" that defense counsel's conduct fell within
the broad spectrum of reasonable professional assistance, and a
petitioner bears the burden of proving "that counsel's
representation was unreasonable under prevailing professional
norms and that the challenged action was not sound strategy."
Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing
Strickland, 466 U.S. at 688-89); see also Herrera-Gomez, 2009 WL
4279439, at *5.  Thus, under Strickland,

> [an attorney's] strategic choices made after thorough
> investigation of [the] law and facts relevant to
> plausible options are virtually unchallengeable; and
> strategic choices made after less than complete
> investigation are reasonable precisely to the extent
> that reasonable professional judgments support the
> limitations on investigation

Strickland, 466 U.S. at 690-91.  Moreover, "[i]n assessing the

attorney's performance, a reviewing court must judge his conduct

on the basis of the facts of the particular case, viewed as of

the time of counsel's conduct, and may not use hindsight to

second-guess [counsel's] strategy choices."  Mayo v. Henderson,

13 F.3d 528, 533 (2d Cir. 1994) (internal quotation marks and

citations omitted); see also Strouse v. Leonardo, 928 F.2d 548,

553 (2d Cir. 1991); United States v. Jones, 918 F.2d 9, 11-12

(2d Cir. 1990).  Thus, a petitioner cannot prevail on a claim of

ineffective assistance merely because the petitioner believes

that counsel's strategy was inadequate.  See United States v.

Sanchez, 790 F.2d 245, 253 (2d Cir. 1986).

     To meet the second prong of the Strickland test, the

petitioner must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Strickland, 466 U.S. at 694; see also Lockhart v.

Fretwell, 506 U.S. 364, 369 (1993) (to prove prejudice

petitioner "must show that counsel's errors were so serious as

to deprive the defendant of a fair trial, a trial whose result is reliable") (internal quotation marks omitted); <u>Herrera-Gomez</u>, 2009 WL 4279439, at *5.

In the context of a guilty plea, the petitioner must show that there is a reasonable probability that, but for the challenged ineffective assistance, he would not have pleaded guilty and would have insisted on going to trial.  <u>United States v. Couto</u>, 311 F.3d 179, 187 (2d Cir. 2002); <u>see also</u> <u>Strickland</u>, 466 U.S. at 694; <u>Jones v. Walsh</u>, No. 06 Civ. 225, 2007 WL 4563443, at *7 (S.D.N.Y. Dec. 27, 2007).

### III.

The petitioner moves for relief on five[2] separate grounds: (1) that defense counsel failed to disclose a plea offer that the petitioner would have taken (Am. Pet. 5.); (2) that the petitioner's guilty plea was obtained by fraud, deceit, and ineffective assistance of counsel and was therefore unknowing and unintelligent, (Am. Pet. 6.); (3) that the Sentencing Agreement was obtained by fraud and deceit, by coercion, and by

---

[2] The petitioner purports to assert an additional ground for relief, that the "plea was unknowing and voluntary and therefore should be set aside," (Am. Pet. 9.), but that claim appears to be part of the petitioner's second ground, which asserts that the plea was obtained by fraud, deceit, and ineffective assistance of counsel and therefore "is unknowing and unintelligent."  Whether this assertion is considered as one or two separate grounds, it is plainly without merit.

ineffective assistance of counsel, (Am. Pet. 8.); (4) that the
sentence is unreasonable as a result of the disparity in the
sentence received by the petitioner and his co-defendants, (Am.
Pet. 9.); and (5) that the petitioner's counsel labored under a
conflict of interest because he sought to obtain other clients
as a result of his representation of the petitioner.[3]  None of
these assertions has any merit.

The petitioner's first claim is plainly refuted by the
record.  The petitioner's trial counsel discussed with the
petitioner the potential plea agreement with the Government, and
the specific proposed Stipulated Guideline Sentencing Range of
135-168 months beginning in December 2005.  The petitioner's
counsel advised the petitioner about the advantages and
disadvantages of accepting that plea agreement.  The
petitioner's trial counsel advised against accepting that plea
agreement in view of the petitioner's desire to obtain safety

---

[3] The petitioner briefly argues in the Amended Petition that Chief Judge
Mukasey erred by sentencing the petitioner according to a higher quantity of
drugs than that charged in the Indictment.  The petitioner did not pursue
this argument at the hearing, and indeed the argument is without merit.  The
petitioner's reliance on Apprendi v. New Jersey, 530 U.S. 466 (2000) is
misplaced and "misses the distinction between elements of an offense and
facts relevant to sentencing."  United States v. Vaughn, 430 F.3d 518, 526
(2d Cir. 2005).  Apprendi held that "any fact (other than prior conviction)
that increases the maximum penalty for a crime must be charged in an
indictment, submitted to a jury, and proven beyond a reasonable doubt."
Apprendi, 530 U.S. at 476 (internal quotation marks and citations omitted).
Here, the Indictment did specify a quantity of one kilogram and more of
heroin.  That quantity, which was charged in the indictment and admitted in
the guilty plea, subjected the petitioner to the sentence of a possible term
of life imprisonment and a mandatory minimum sentence of ten years
imprisonment.  See 21 U.S.C. §§ 960(b)(1)(A) & 963.  Chief Judge Mukasey's
consideration of quantities greater than one kilogram was merely a "fact[]
relevant to sentencing."  Vaughn, 430 F.3d at 526.

valve treatment and a possible sentence below the mandatory
minimum sentence of 120 months, a result that would not have
been possible under the plea agreement.  The notes of the
petitioner's trial counsel are fully consistent with the trial
counsel's testimony that he thoroughly discussed the possible
plea agreement with the petitioner.  That discussion was also
confirmed by Chief Judge Mukasey at the time of the petitioner's
plea when trial counsel informed the Court that there had been a
discussion of a plea agreement.  After the plea, and shortly
before the sentence, the Government renewed its plea offer.  At
that time, the petitioner's trial counsel urged him to accept
it, but the petitioner rejected that advice.  There is simply no
merit to the petitioner's contention that his trial counsel did
not inform him of the Government's plea offer.

The petitioner's second and third claims are equally
without merit.  There was no fraud, deceit, or coercion, or any
ineffective assistance of counsel in connection with the
petitioner's guilty plea or his agreement to the Sentencing
Agreement.  The record reflects a thorough discussion by the
petitioner's trial counsel with the petitioner in which trial
counsel discussed the advantages and disadvantages of the
various courses open to the petitioner.  The ultimate choices
were appropriately the petitioner's, but they were freely and
voluntarily made after thorough and considered advice by his

trial counsel.  There was no coercion.  The petitioner's
contemporaneous denials of any coercion in both proceedings
before Chief Judge Mukasey are fully supported by the credible
testimony of the petitioner's trial counsel and by the
contemporaneous notes of trial counsel.  Similarly, the
petitioner's allegations that he was promised "time served" are
incredible and are contradicted by the terms of the Sentencing
Agreement, by his contemporaneous statements to Chief Judge
Mukasey, and by the credible testimony of his trial counsel.[4]
Trial counsel went far beyond any objective standard of
effective assistance of counsel by explaining in detail the
consequences of the various options open to the petitioner and
providing reasoned advice to the petitioner so that the
petitioner could make informed decisions.

     The petitioner's fourth claim—that his sentence was
"unreasonable"—also fails.  The petitioner agreed in the
Sentencing Agreement that any sentence within the stipulated
range of 168 to 210 months' imprisonment would constitute a

---

[4] The petitioner's related assertion that the Sentencing Agreement is invalid
because there was no consideration for it is plainly incorrect.  The
Government had contended that the petitioner should receive a four-level
enhancement for an aggravating role in the offense, as set forth in the
Pimentel letter.  (App. 17.)  The petitioner, meanwhile, asserted that he
should receive "safety-valve" relief, as set forth in trial counsel's
sentencing submission.  (Gov. Ex. 7.)  As was made explicit at the sentencing
proceeding, in entering into the Sentencing Agreement, the Government
"decided to bargain away its ability to seek an upward adjustment in terms of
role in exchange for [the petitioner] giving up his right to argue for safety
valve relief."  (App. 63.)  Both sides therefore gave up substantive
arguments in entering into the agreement.

"reasonable" sentence under § 3553(a) and that conclusion was plainly correct. The record is clear that Chief Judge Mukasey's sentence was both procedurally and substantively reasonable. Procedurally, Chief Judge Mukasey appropriately calculated the applicable Guideline Range, expressly considered the relevant factors under 18 U.S.C. § 3553(a), and then demonstrated his understanding that the Guidelines were non-binding by sentencing the petitioner below the applicable Guideline Range. Substantively, the record is clear that the petitioner was convicted of a serious narcotics offense that involved a large quantity of heroin. Indeed, the proffer notes that the petitioner attaches to his petition demonstrate that he played a significant role[5] in the heroin trade over a long period of time. Based on this record, Chief Judge Mukasey's below-Guideline sentence cannot be deemed "unreasonable." See United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances.").

---

[5] The only specific basis for this "unreasonableness" claim is that there was an allegedly unwarranted disparity between the petitioner's sentence and the sentences of his co-conspirators, in particular his brother. This issue was addressed at length in trial counsel's sentencing submission and at the sentencing proceeding. The Government argued that, based on the proof it had, the petitioner was far more culpable than his brother. (App. 62-63.) Moreover, this view is supported by the proffer notes submitted by the petitioner, which confirm unequivocally that his brother became involved in the drug business only long after the petitioner that his brother served as an intermediary between the petitioner and the couriers who transported the petitioner's heroin. (Am. Pet. Ex. 2, at 5.)

More generally, the petitioner's claim that his trial counsel was ineffective is belied by the extensive record of the diligent efforts by his trial counsel to obtain the best possible result for the petitioner and his ultimate success in obtaining a sentence for the petitioner which was substantially lower than the Guideline Range provided by the Government's Pimentel letters and indeed within the Sentencing Guideline Range provided in the plea agreement that the petitioner claims he would have accepted.

The petitioner's suggestion that his appellate counsel was ineffective because she submitted an Anders brief instead of challenging the "reasonableness' of the sentence, (Am. Pet. 18.), is without merit.  The petitioner waived his right to appeal any sentence below 210 months.  In any event, there were indeed no non-frivolous issues for appeal, a conclusion with which the Court of Appeals for the Second Circuit agreed by summarily affirming the conviction.

The petitioner raised an additional argument at the evidentiary hearing, namely that his counsel labored under a conflict of interest because he was attempting to obtain representation from other potential clients.  However, there was no conflict of interest.

The Sixth Amendment right to assistance of counsel includes the right to be represented by an attorney who is free from

26

conflicts of interest.  See, e.g., Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002).  This right would be violated if the attorney has "(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994).  "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Schwarz, 283 F.3d at 91 (internal quotation marks omitted).  An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future."  United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998); see also United States v. Armaza, 280 F. Supp. 2d 174, 178-79 (S.D.N.Y. 2003).

In order to establish that an actual conflict of interest has adversely affected the performance of defense counsel, the petitioner must show "that counsel's interests diverged from the defendant's on some material legal or factual issue and resulted in 'an actual lapse in representation.'" Triana v. United States, 205 F.3d 36, 40-41 (2d Cir. 2000) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980)); see also United States

27

v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997).  This is a three-part
showing.  First, the petitioner must show an actual conflict of
interest, that is, that the "attorney's and defendant's interest
diverge with respect to a material factual or legal issue or to
a course of action."  United States v. Moree, 220 F.3d 65, 69
(2d Cir. 2000) (internal citations and quotation marks omitted).
Second, the petitioner must demonstrate an "actual lapse in
representation" that resulted from the conflict.  "An actual
lapse in representation is demonstrated by the existence of some
plausible alternative defense strategy not taken up by counsel."
Id. (internal quotation marks and citations omitted).  In this
regard the petitioner does not need to show that the alternative
defense "would necessarily have been successful."  Id. (internal
quotation marks and citations omitted).  It would be sufficient
to show that the alternative strategy "possessed sufficient
substance to be a viable alternative."  Id. (internal quotation
marks and citations omitted).  Third, the petitioner must show
that the alternative defense was "inherently in conflict with or
not undertaken due to the attorney's other loyalties or
interests."  Id. (internal quotation marks and citations
omitted.) (emphasis in original).  In other words, the
petitioner must show that "trial counsel chose not to undertake
[the alternative strategy] because of his conflict."  Winkler v.
Keane, 7 F.3d 304, 309 (2d Cir. 1993); see also Mittal v. United

<u>States</u>, No. 02 Civ. 8449, 2005 WL 2036023, at *13 (S.D.N.Y. Aug. 24, 2005).

In this case there was no actual or potential conflict of interest.  This is not a case where the petitioner's trial counsel was representing another client with interests adverse to those of the petitioner, or had ever done so.  There is also no evidence that the petitioner's trial counsel ever placed his interest in obtaining other clients over representing the best interests of the petitioner.  Indeed, the interests of the petitioner's trial counsel were exactly congruent with those of the petitioner—he sought to get the best possible result for the petitioner and getting the best result for the petitioner would enhance his reputation and lead to professional advancement for his trial counsel.  If this be conflict, few lawyers could survive the analysis.

**IV.**

The petitioner also moves for production of (1) a copy of the Government's plea offer and (2) tape recordings of the petitioner's conversations with his trial counsel at about the time of the petitioner's plea.  The Government provided a copy of the plea offer in response to the petitioner's motion.  The Government also represented in its responsive papers that the

tapes the petitioner seeks no longer exist.  The petitioner's new counsel conceded that the tapes do not exist at the outset of the evidentiary hearing in this Court.  The motion for production of the tapes is therefore denied as moot.

**V.**

The petitioner also moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S. Sentencing Guidelines Manual § 1B1.13.

"A district court may not generally modify a term of imprisonment once is has been imposed." Cortorreal v. United States, 486 F.3d 742, 744 (2d Cir. 2007).  18 U.S.C. § 3582(c)(1)(A) provides an exception to the general rule such that "the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable" if "extraordinary and compelling reasons warrant such a reduction" or the defendant is at least 70 years of age and has served at least 30 years in prison.  U.S. Sentencing Guidelines Manual § 1B1.13 reiterates that the court may reduce a term of imprisonment under the conditions described in § 3582(c)(1)(A) "[u]pon motion of the Director of the Bureau of Prisons."

30

Here, the Court lacks the power to reduce the petitioner's sentence because there has been no such motion by the Director of the Bureau of Prisons. <u>See</u> <u>United States v. Frazier</u>, No. 01 Cr. 450, 2008 WL 5210022, at *1 (S.D.N.Y. Dec. 12, 2008) (court lacked power to reduce sentence pursuant to § 3582(c)(1)(A) when claim not brought by Director of the Bureau of Prisons). Moreover, there is no basis for a reduction in sentence.  The petitioner's motion for a reduction in sentence is denied.

## CONCLUSION

The Court granted the petitioner's motion for an evidentiary hearing. The petitioner's § 2255 petition and motion for a reduction of sentence are **denied**. The motion to compel is **denied as moot**.

The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) because the petitioner has failed to make a substantial showing of the denial of a constitutional right.

The Clerk is directed to close the motion to compel, which has not been assigned a docket number. The Clerk is also directed to enter Judgment and to close this case.

**SO ORDERED.**

Dated:    New York, New York
          March 5, 2010

                              John G. Koeltl
                              United States District Judge